**Vanda Dale BYARS, (Plaintiff) Respondent,**

**v.**

**Marguerite C. BUCKLEY et al., (Defendants) Appellants.**

**No. 54477.**

Supreme Court of Missouri,
Division No. 1.

Dec. 14, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 11, 1971.

Milton Suffian, Marvin Q. Silver, St. Louis, for respondent.

Clerk & Ochsner, Melville A. Ochsner, St. Louis, for appellants except Marguerite C. Buckley.

HOLMAN, Judge.

This is an action to contest the last will of Burton D. Buckley who died December 31, 1965, at the age of 70. The will had been executed October 1, 1965. The plaintiff is an adopted daughter of testator. The defendants are the executor, certain trustees, and the beneficiaries named in the will. The value of the estate is about $321,-000, exclusive of certain oil royalties which produce a substantial income. Plaintiff alleged that testator lacked testamentary capacity to make a will and that he was suffering from an insane delusion which affected his testamentary capacity. The trial resulted in a verdict that the written instrument in question "is not the last will and testament of Burton D. Buckley, deceased." All of the defendants except the widow (who defaulted) have appealed.

Plaintiff-respondent has filed a motion to dismiss the appeal because of violations of S. Ct. Rules by defendants. While there is some merit to the motion we do not believe a dismissal is required and the motion is therefore overruled.

Two points are raised on this appeal which deal with the sufficiency of the evidence, i. e., (1) that plaintiff failed to present sufficient evidence to warrant submission of the case to the jury, and (2) that there was not sufficient evidence to support the giving of Instruction No. 10 which submitted the issue of an insane delusion. Notwithstanding the fact that this was a long trial and that the aforementioned evidentiary issues are presented we believe a relatively short statement of facts will suffice.

At the outset it should be stated that the proponents presented substantial evidence at the beginning of the trial indicating that testator was of sound mind and duly executed the will as required by law, and thus they carried the burden of making a prima facie showing in that regard. To a large extent the evidence hereinafter stated is limited to that tending to support the verdict.

Testator was survived by his wife Marguerite but she had not lived with him since the year 1960. The Buckleys had two adopted daughters, defendant Marjorie Schulte and plaintiff Dale Byars. Marjorie, at the time of her father's death, was 26 years old, married, and had two children. Dale at that time was 22, married and also had two children. She had been previously married but her first husband had died. Except for a period in September 1965 all of the evidence indicated that testator always had a feeling of love and admiration for Dale. The evidence indicated that Dale visited testator regularly. For a number of years he had given Dale $300 a month to assist in the support of her family. He had also given financial aid to Marjorie and her husband.

Testator executed a will in December 1962, another will in June 1963, and, as indicated, his last will on October 1, 1965. Plaintiff was made a very substantial beneficiary in the will of 1963, but the only be-

quest to her in the last will was a one-fourth interest in the oil and gas interests in Louisiana, and that was of no consequence because, under Louisiana law, these interests vested outright 50% in the widow and 25% in each of the daughters with the widow being entitled to the entire income for a period of ten years unless she dies prior to that time. The principal beneficiaries of the last will were the widow and plaintiff's older sister Marjorie.

Testator was in very bad health from 1957 until the date of his death. We think it can fairly be said that, for many years, he had been a confirmed alcoholic and that such contributed to his mental and physical difficulties. The evidence indicated that he drank large quantities of beer, and during some of the time would drink a fifth of whiskey a day. He apparently had little appetite and, with the exception of breakfast, seldom ate normal meals. He was hospitalized on a number of occasions and in 1960 an operation was performed at Dr. DeBaky's Vascular Center in Houston, Texas, for the removal of an aneurysm of the abdominal aorta.

On July 6, 1961, testator was found by the police lying on the sidewalk where he apparently had fainted. The next day his wife had the family physician enter him in Missouri Baptist Hospital where the diagnosis was acute brain syndrome with a history of excessive use of alcohol and drugs, mainly barbiturates. On August 2, 1961, the Probate Court of St. Louis County held a hearing and testator was declared mentally ill requiring involuntary hospitalization. During this period of hospitalization he was mentally confused, as indicated by the fact that on one occasion he was found in the women's toilet, and, although he said he was good in mathematics he was not able to subtract simple numbers, and he had the idea that a tenant owed him $400 a month rental when the rental was only $100 a month. He remained in the hospital, receiving treatment by psychiatrists, until October 9.

In December 1964 testator executed a power of attorney which authorized his attorney, Mr. Clerk, to make deposits and withdrawals from his bank account. Mr. Clerk used these powers from about the middle of September 1965 to the date of testator's death.

The various hospital records show that testator had diabetes and had suffered at least two strokes; was often quite depressed; had slurred speech at times; he had generalized arteriosclerosis, arteriosclerotic heart disease, cerebral thrombosis, and cerebral vascular insufficiency. When hospitalized in 1964 he was examined by Dr. Mendelson, a neurologist, the record of which discloses that "patient has a long history of vascular difficulty. * * * He has had several paralytic strokes. He states that first was a transient weakness of the left foot, but that the subsequent two were severe and involved and pertained to both lower extremities. * * * He is slow to respond to questions. He appears to be intellectually dull." He was in the hospital from June 1 to June 8, 1965, at which time a rectal polyp with carcinoma was removed. The medical opinion was that the carcinoma had metastasized but due to testator's age and general physical condition he was not considered a candidate for extensive surgery. Based upon the evidence heretofore stated and other evidence, as well as personal observation of testator, Dr. Edmund V. Cowdry, Jr., in answer to a hypothetical question, expressed the opinion that on October 1, 1965, testator was of unsound mind. In explaining his answer he stated, "This man had a damaged brain. His brain was far more damaged toward the time of his death than it was at the time I saw him [1961]."

In determining whether the evidence was sufficient to make a submissible case we must accept plaintiff's "evidence as true, disregard proponent's evidence unless it aids contestant's case, and give contestant the benefit of every favorable inference that may be legitimately drawn

from the whole evidence." Glover v. Bruce, Mo.Sup., 265 S.W.2d 346, 352.

We have concluded that there was sufficient substantial evidence in this case from which a jury could reasonably have found a lack of general testamentary capacity and hence the court did not err in overruling the defendant's motion for a directed verdict. The evidence we have heretofore detailed is sufficient to demonstrate the basis for our conclusion and it is not necessary to repeat it here. We will mention, however, the unequivocal opinion of Dr. Cowdry to the effect that testator had a damaged brain and was of unsound mind. That opinion was based on facts clearly sufficient to warrant such a conclusion. We are supported in our view by cases such as McGrail v. Schmitt, Mo.Sup., 357 S.W. 2d 111, and Houghton v. Jones, Mo.Sup., 418 S.W.2d 32. We have examined the cases cited by defendants in support of a contrary view but find that they are all distinguishable upon the factual situation presented.

At the request of plaintiff the court gave Instruction No. 10 which reads as follows: "Your verdict must be that the instrument offered is not the Will of the decedent, Burton D. Buckley, if you believe: First: Said Burton D. Buckley labored under an insane delusion. Second: That such delusion overcame and controlled his will and judgment in the execution of the paper offered as his Will." Defendants have briefed the contention that there was not sufficient evidence to support the giving of that instruction.

"It seems to be well settled that wills may be set aside on the ground that, while the testator is mentally capable in other respects, he is possessed of an insane delusion as to some matter involved in the making of the will. * * *. An insane delusion is defined to be a false and fixed belief not founded on reason and incapable of being removed by reason. * * * The delusion which makes a testator incapable of making a will must be a delusion as to

or affecting some matter necessarily involved in the making of a will, and not as to some extraneous or collateral matter or fact." Hall v. Mercantile Trust Co., 332 Mo. 802, 59 S.W.2d 664, 669, 670. "There is no such thing as a delusion founded upon *facts*. It is a mental conception in the absence of facts. If the idea entertained has for a basis *anything substantial* it is not a delusion." Wigginton v. Rule, 275 Mo. 412, 205 S.W. 168, 179. An insane delusion is insanity, i. e., it is partial insanity in respect to a particular subject.

Examples of insane delusion are false beliefs (1) that a child of testator is not his child, McGrail v. Rhoades, Mo.Sup., 323 S.W.2d 815; (2) that testator's daughter planned to put her in an insane asylum, Hardy v. Barbour, Mo.Sup., 304 S.W.2d 21; (3) that testatrix's son and his wife were responsible for the death of her husband who was killed when struck by lightning, Clingenpeel v. Citizens' Trust Co., Mo.Sup., 240 S.W. 177; (4) that testator's wife was trying to kill him, Donnan v. Donnan, Mo.Sup., 264 S.W.2d 318; (5) that his children had unjustly exacted of testator more corporate stock than they were entitled to, Holton v. Cochran, 208 Mo. 314, 106 S.W. 1035; and (6) that testator's son-in-law and a girl living in his home were having illicit relations, Wigginton v. Rule, supra.

In the case at bar there are two items of evidence which plaintiff relies upon to support the submission of an insane delusion. They were developed in the testimony of Mr. Clerk, testator's attorney. One was a notation made by testator on a paper containing instructions relating to his last will where he referred to plaintiff as "whereabouts is unknown" even though she lived in the St. Louis area. The other evidence plaintiff mentions is a conversation on September 8, 1965, between testator and Mr. Clerk relating to the decision of testator to substantially eliminate plaintiff from a share in his estate. The pertinent part of Mr. Clerk's testimony in that regard is

as follows: "Q What did he say was the reason for cutting her out? A He didn't go into particular reasons; he just said, 'I have had enough.' * * * Q Did he give any reasons? A Yes, he did. In one respect he did make a statement or two. He was not accustomed to going into detail as to what predicated or motivated his decisions. Q What did he say? A He said Vanda Dale had conducted herself in an unladylike manner. Q Where did he say that occurred? A Oh, I don't remember that he said it occurred any place. * * * Q When did he say that it occurred? A He didn't say that. Q Did he give you any idea or any knowledge of what he based his allegation of misconduct on? A No. Q And that was the only allegation, was misconduct? A Yes, to my recollection. * * * Q Did he say it occurred within the past year? A He didn't make any statement as to time, events or details."

We have concluded that the aforementioned items do not constitute substantial evidence sufficient to support a submission of an insane delusion. We do not regard the notation concerning plaintiff's whereabouts to be of any consequence because it does not appear that that alleged impression entered into testator's decision to disinherit plaintiff. The statement that plaintiff had conducted herself in an unladylike manner was vague and tenuous from any viewpoint. Testator gave no details to Mr. Clerk as to what conduct he had in mind or when it may have occurred. "Unladylike" is defined in Webster's Third New International Dictionary as "lacking the behavior, manner or style considered proper for a lady." The word "lady", in the use under consideration, is defined in that dictionary as "a woman of refinement and gentle manners, a woman whose conduct conforms to a certain standard of propriety or correct behavior." It is therefore apparent that testator could have had in mind anything from rude manners to specific immoral conduct.

It is our view that this evidence fails, in two respects, to conform to the requirements of an insane delusion. In the first place, it does not appear to have been a fixed belief "incapable of being removed by reason." Frank v. Greenhall, 340 Mo. 1228, 105 S.W.2d 929, 940. We do not hold that in every case there must be evidence that someone took issue with testator and tried to reason him out of the delusion. But in this case the evidence indicates that the matter was discussed only once, and that Mr. Clerk did not seek or obtain any details and did not endeavor to dissuade testator from the alleged delusion. It seems to us that something more than is here shown is required to warrant a conclusion that testator had a fixed persistent belief which could not be removed by reason.

The other respect in which this evidence is deficient is that there is no evidence that the belief was false. The cases heretofore cited indicate that if the belief is based on evidence or fact it is not a delusion. Of course, with no information as to what testator had in mind defendants could not offer proof that it was true or based on information he had received. However, we think the burden was on plaintiff to offer some evidence which would support a finding that testator's belief was false. We note that none of plaintiff's testimony related to this matter. Of course she could not deny specific misconduct because the conduct to which testator referred is not known. She could have testified, however, that for a reasonable period prior to September 8, 1965, she had conducted herself in a ladylike manner and that she did not have any knowledge as to the misconduct to which her father had referred. She could also have offered evidence that at that time she bore a good reputation for ladylike conduct in the community in which she lived. We do not decide whether such evidence would or would not have been sufficient but it at least would have provided some basis for a finding that the belief was false. We note that in a similar factual situation evidence such as we have suggested was held insufficient to prove that the belief was false, and thus an in-

sane delusion. See Firestine v. Atkinson, 206 Iowa 151, 218 N.W. 293.

As indicated, we hold that the court erred in giving Instruction No. 10 because there was no substantial evidence to support that submission.

Defendants have also briefed contentions of error in the giving of certain other instructions. We deem it unnecessary to rule those contentions since counsel for plaintiff will have the opportunity to re-examine those instructions and, if it is considered advisable to offer them at another trial, may make such corrections therein as may be considered necessary in view of the attack made thereon by defendants.

■ One point relating to admission of evidence will be briefly discussed as it might arise on another trial. Defendants say that Dr. Cowdry was improperly permitted to answer the hypothetical question which included the records of Missouri Baptist Hospital because he signed the discharge of testator from that hospital on October 9, 1961. While we find it difficult to understand the contention it apparently is based on the theory that when testator was discharged (after the court finding that he was mentally ill) it indicated that he had recovered and the hospital records could no longer be considered in determining testator's mental condition, or, at least, that Dr. Cowdry was estopped to consider that record in concluding that testator was of unsound mind. The contention is obviously without merit. A hypothetical question such as was propounded in this case would not have been complete without the hospital records of Missouri Baptist as well as the other hospitals. The fact that testator was discharged from the hospital did not indicate that he was completely free from all mental difficulties or that the records should not be considered in evaluating testator's future mental condition.

The judgment is reversed and cause remanded for a new trial.

All concur.